UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| HAMDY ALEX ABOU-HUSSEIN ) | |
| also known as Alex Abou-Hussein, ) | C/A No. 2:14-cv-02597-RMG-MGB |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| RAYMOND EDWIN MABUS, JR. ) | |
| Secretary, United States Department of ) | |
| Navy, and NAVAL CRIMINAL ) | |
| INVESTIGATIVE SERVICES ) | |
| Unknown Agents, ) | |

This matter is before the court on the Motion to Dismiss or in the alternative, for Summary Judgment by Defendant Raymond Edwin Mabus, Jr., Secretary, United States Department of Navy ("Mabus").[1] Plaintiff Hamdy Alex Abou-Hussein, also known as Alex Abou-Hussein ("Plaintiff"), proceeding *pro se*, filed this action seeking relief for the alleged actions of his employer, the Department of the Navy. (Dkt. No. 1.) Plaintiff also sued Unknown Agents of the Naval Criminal Investigative Services ("NCIS Unknown Agents").[2]

---

[1] Mabus previously filed a Motion to Dismiss for failure to prosecute, which was denied as moot via reference order of December 16, 2014 after Mabus filed the instant Motion to Dismiss. (Dkt. Nos. 36, 44.)

[2] Counsel for Defendant Mabus originally moved to dismiss on behalf of the Unknown Agents, although he specifically stated that he was not representing any specific individual NCIS agent because they had not been identified and served. (Dkt. No. 42, p. 5, fn. 2.) In his Reply Memorandum In Support of Dismissal (Dkt. No. 62, p. 1, fn 1 and 4-6), counsel states that because the Unknown Agents have not been identified, they have not requested representation and that any "motion" on behalf of the Unknown Agents should be read as a suggestion to the Court to dismiss the claims *sua sponte*.

1

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters involving *pro se* litigants are referred to a United States Magistrate Judge for consideration.

Mabus filed the Motion to Dismiss or the alternative for Summary Judgment ("Motion to Dismiss") on December 15, 2014. (Dkt. No. 42.) By order filed December 16, 2014, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Petitioner was advised of the dismissal and summary judgment procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 43.) After receiving two extensions, Plaintiff filed a Response in Opposition to the Motion ("Opposition") with supporting documents on April 27, 2015. (Dkt. Nos. 52, 59, 61.) Mabus filed a Reply to Response in Opposition ("Reply) on April 29, 2015. Portions of this case were transferred from the United States District Court for the District of Columbia ("D.C. Court") by order of United States District Judge Reggie B. Walton.

After carefully considering the entire record, including Plaintiff's Complaint, the pleadings from the D.C. Court, Mabus' Motion to Dismiss, Plaintiff's Opposition, and Mabus' Reply, for the reasons set forth below, the Court recommends that the instant action be dismissed.

I.   PROCEDURAL HISTORY

This case originated with the filing of the Complaint in the D.C. Court on June 6, 2012. (Dkt. No. 1). The Complaint is lengthy and difficult to comprehend, but it contains three distinct "claims": 1) a Title VII claim based on national origin discrimination (Dkt. No. 1, p. 18); 2) a retaliation claim under the Whistleblower Protection Act (Dkt. No. 1, pp. 18-19); and 3) a retaliation claim pursuant to the False Claims Act ("FCA") (Dkt. No. 1, p. 19). Plaintiff also requests injunctive relief ordering the Department of Justice to update its website and requests

unspecified declaratory relief. (Dkt. No. 1, p. 20.) The Complaint also references other statutes which do not pertain to the three claims.

On October 24, 2012, Mabus filed a Motion to Dismiss in the D.C. Court. (Dkt. No. 7.) On November 26, 2012, Plaintiff filed a Memorandum in Opposition to Mabus' Motion to Dismiss with numerous attachments. (Dkt. 13.) On December 21, 2012, Mabus filed a Reply. On July 17, 2013, The D.C. Court filed a Memorandum Opinion and Order. (Dkt. Nos. 17, 18.)

The D.C. Court transferred the Title VII claim against Mabus to the District of South Carolina as the appropriate venue. (Dkt. No. 18, pp. 7-12.) The D.C. Court dismissed the other two claims against Mabus (for violation of the retaliation provisions of the Whistleblower Protection Act and for violation of the retaliation provisions of the FCA). (Dkt. 18, pp. 7-14, 15-16.) The D.C. Court also addressed other potential claims that Plaintiff stated in his brief in opposition to Mabus' Motion to Dismiss, construing the *pro se* Complaint liberally. (Dkt. No. 18, p. 6-7, 14-15, 17-20.) Plaintiff argued to the D.C. Court that he stated a claim pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), one of the statutes referenced in the Complaint in preliminary paragraphs, but for which there was no corollary cause of action. The D.C. Court ruled that to the extent the Complaint stated a claim under RICO, it must be dismissed for lack of jurisdiction because of sovereign immunity. (Dkt. No. 18, pp. 14-15.) The D.C. Court also denied the injunctive relief sought, to force the Department of Justice to update its website. (Dkt. No. 18, pp. 17-19.)

The actual date of the transfer to the District of South Carolina is June 26, 2014, after Plaintiff's appeal of the D.C. Court's order and denial of his Motion for Relief from Judgment. (Dkt. Nos. 19-26.)

Therefore, the only claims transferred to the District of South Carolina were the Title VII claim against Mabus and any potential claims the Complaint may state against the NCIS Unknown Agents. This Report and Recommendation will address the issues remaining in this matter.

## II.     FACTUAL ALLEGATIONS

The following factual allegations are gleaned from Plaintiff's Complaint.  Plaintiff began working for the Space and Naval Warfare Systems Command ("SPAWAR") in Charleston, South Carolina in September 2005. (Dkt. No. 1, ¶¶ 1, 30.)  After settling an Equal Employment Opportunity Commission complaint against SPAWAR in 2007, Plaintiff was falsely accused of sexual harassment and was subjected to repeated "false espionage and terrorism allegations" based on his "Arabic national origin."  (Dkt. No. 1, ¶¶37, 39, 57.)  During this time, Plaintiff "began to piece the puzzle together" of contract fraud within SPAWAR.  (Dkt. No. 1, ¶40.) After his supervisors noticed that he had begun "collecting financial and contracting information" showing the fraudulent conduct, members of SPAWAR "humiliated him unceasingly with busy work, refused to fund his training, tried to have him shipped to combat zones for a year deployment away from Habeas Corpus, and [made] snide remarks behind his back." Id. Eventually, he was transferred to a facility in San Diego where he was subject to a requirement that he obtain a higher level security clearance to "disqualify him from federal service."  (Dkt. No. 1, ¶47, 50.)  In March of 2007, he flew from San Diego to Washington, D.C. to "hand-carry an appeal for redress to all members of the Senate and House Armed Services Committees." (Dkt. No. 1, ¶51.)

In May of 2008, Plaintiff filed a complaint with the Office of Special Counsel, which resulted in him being subjected to "intimidating death threats, humiliation, discrimination, and a

4

conspiracy that "needs a much longer complaint to detail" including an unfounded criminal investigation by NCIS agents. (Dkt. No. 1, ¶55 i.). He subsequently filed actions in the United States District Court for the District of South Carolina against SPAWAR under the False Claims Act as a *qui tam* action and the Freedom of Information Act ("FOIA"). (Dkt. No. 1, ¶55 vii.) [3] He also filed multiple complaints with the Office of Special Counsel and Department of Defense Inspector General, as well as appeals with the Merit Systems Protection Board ("MSPB") during 2009 to 2011 alleging "contract fraud, conspiracy death threats, and retaliatory discrimination on account of his Arab origin and in retaliation for his whistleblowing." (Dkt. No. 1, ¶ 8.)[4]

The allegations against the NCIS Unknown Agents are contained in the Complaint, paragraphs 7, 27, and 55 i., v. (Dkt. 1.) Those allegations appear to be: 1) NCIS agents opened an investigation of Plaintiff (Dkt. No. 1, ¶¶ 7, 55 i); 2) NCIS agents wrote false reports to the General Counsel of the Navy that Plaintiff was plotting a terrorist shooting attack (Dkt. No. 1, ¶27); 3) NCIS and others unlawfully raised his security clearance requirement (Dkt. No. 1, ¶ 50); 4) in March to April 2009, NCIS agent Troy Williams and other unknown NCIS agents coordinated with SPAWAR to stall an investigation of one of the frauds that Plaintiff had reported and that an NCIS agent "wrote up [Plaintiff] for potential terrorist shooting attack. . . .

---

[3] Both actions were dismissed. See United States ex rel. Alex Abou-Hussein v. Sci. Applications Int'l Corp., Civ. A. No. 2:09-1858-RMG, 2012 WL 6892716 (D.S.C. May 3, 2012), affirmed, 475 F. App'x 851 (4th Cir. 2012) (*qui tam* case); Abou-Hussein v. Mabus, Civ. A. No. 2:09-1988-RMG-BM, 2010 WL 4366557 (D.S.C. June 17, 2010), affirmed, 414 F. App'x 518 (4th Cir. 2011).

[4] In Abou-Hussein v. Merit Systems Protection Board, 557 F. App'x 979 (Fed. Cir. 2014), Plaintiff lost his appeal of an MSPB claim. The undersigned notes that the claims in that litigation are substantially similar to the claims here. They included reprisals for whistleblowing at SPAWAR, such as poor performance evaluations, denial of pay increases, a change in duties and responsibilities, a hostile work environment, an unwarranted criminal investigation, a referral for psychiatric evaluation, death threats and false allegations of espionage, terrorism, substance abuse, and mental illness. 557 F. App'x at 980. See also Dkt. No. 42-2 (other decisions of the MSPB filed as an exhibit to Mabus' Motion).

(Dkt. No. 1, ¶55 v.); 5) NCIS agent Troy Williams "committed several predicate acts too numerous to list." (Id.) [5]; and 6) on November 17, 2008, "NCIS almost detained plaintiff Extra-Judicially." (Dkt. No. 1, ¶55 x.)

### III.   LEGAL STANDARDS

A Rule 12(b)(1) challenge is to the factual basis for subject matter jurisdiction of the court. The burden of proving subject matter jurisdiction is on the plaintiff. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). In determining whether jurisdiction exists, the district court may consider evidence outside the pleadings without converting the proceeding to one for summary judgment. Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991), cert. denied, 503 U.S. 984 (1992). "A failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim" and should be analyzed pursuant to Rule 12(b)(1). Edwards v. Murphy-Brown, L.L.C., 760 F.Supp.2d 607, 613 (E.D. Va. 2011) (citing Jones v. Calvert Gro., Ltd., 551 F.3d 297, 300 (4th Cir. 2009)); see also Hentosh v. Old Dominion Univ., 767 F.3d 413, 416 (4th Cir. 2014); Crane v. Starwood Hotels & Resorts Worldwide, Inc., Civ. A. No. 4:14-01651-PMD-KDW, 2015 WL 1014400, *2 (D.S.C. Mar. 9, 2015).

A Rule 12(b)(6) motion challenges the legal sufficiency of the complaint. Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009). "To survive a motion to dismiss pursuant to Rule 12(b)(6), plaintiff's '[f]actual allegations must be enough to raise a right to relief above the speculative level,' thereby 'nudg[ing] their claims across the line from conceivable to plausible.'" Miller v. Carolinas Healthcare Sys., 561 Fed. App'x 239, 240 (4th Cir.), cert. denied, 135 S. Ct. 677 (2014) (quoting Aziz v. Alcolac, Inc., 658 F.3d 388, 391(4th Cir. 2011)).

---

[5] NCIS agent Troy Williams is not a defendant in this action.

"While a court must accept the material facts alleged in the complaint as true", Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir.1999), statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. Miller, 561 F. App'x at 240 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)); see also Giacomelli, 588 F.3d at 193 ("[N]aked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief.") (internal quotation marks omitted).

In ruling on a 12(b)(6) motion, if the court needs to consider facts outside the pleadings, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given a reasonable opportunity to present all material made pertinent to the motion." FED. R. CIV. P. 12(d).

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

This Court is required to liberally construe *pro se* documents, Estelle v. Gamble, 429 U.S. 97 (1976), holding them to a less stringent standard than those drafted by attorneys, Hughes

7

v. Rowe, 449 U.S. 5 (1980) (per curiam). The mandated liberal construction afforded *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to "conjure up questions never squarely presented" to the court. Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985), cert. denied, 475 U.S. 1088 (1996.).  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court.  Weller v. Dep't. of Soc. Servs., 901 F.2d 387, 391 (4th Cir. 1990).

    IV.    TITLE VII CLAIM AGAINST MABUS

Defendant Mabus moves to dismiss the Title VII claim pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction because Plaintiff has not exhausted his administrative remedies.  (Dkt. No. 42, pp. 4-5.)  Mabus attached as an exhibit to the Motion the Declaration of the SPAWAR Deputy Equal Employment Opportunity Officer. The Declaration states that Plaintiff has filed only one formal EEO complaint, and that one formal complaint was filed on October 18, 2005.  That 2005 complaint was settled on March 1, 2007. Plaintiff has not contacted any EEO officer at SPAWAR to institute the formal or informal process since that time. (Dkt. 42-1.)

Federal employees asserting Title VII claims, such as Plaintiff's claim that he was discriminated against due to his Arabic national origin (Dkt. 1, ¶ 57), must exhaust their administrative remedies as a precondition to filing a civil action in federal district court. See Brown v. Gen. Servs. Admin., 425 U.S. 820, 832 (1976); Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132 (4th Cir. 2002.) Plaintiff's failure to exhaust administrative remedies deprives the court of subject matter jurisdiction.  Jones v. Calvert Group, Ltd., 551 F.3d 297, 300 (4th Cir. 2009).

Plaintiff has not alleged in his Complaint, nor has he provided any evidence, that he filed an EEOC complaint since he settled with them in 2007. Mabus provided the Declaration of the Deputy EEO Officer with SPAWAR that no other EEO complaint exists. Plaintiff does not argue anywhere in his Opposition that he has exhausted his administrative remedies. Additionally, Plaintiff abandons this claim in his Opposition. Plaintiff states three times in his Opposition that the Title VII claim is abandoned: 1) "Plaintiff abandoned his Title VII claim in instant suit" (Dkt. No. 62, p. 11); 2) "Plaintiff argues, in the alternative, that Title VII does not apply to instant causes of action, and maintains RICO, APA, FCA, and Bivens claims." (Dkt. No. 62, p. 11); and 3) "[c]learly personnel issues are not the issues of instant suit; moreover, Plaintiff already abandoned his Title VII claim." (Dkt. No. 62, p. 12.)

The undersigned recommends that the Title VII cause of action against Mabus be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction. In the alternative, the Title VII claim should be dismissed because Plaintiff has abandoned it.

V.    CLAIMS AGAINST NCIS UNKNOWN AGENTS[6]

   a. RICO Claim

The D.C. Court considered that the Plaintiff argued in his Opposition to the Motion to Dismiss that the suit was brought under the RICO Act, even though there was no enumerated claim for it. This claim was specifically transferred to the District of South Carolina in the Order transferring the case:

> ORDERED that the Clerk shall forthwith transfer this action, which now consists solely of the Plaintiff's claim under Title VII against the Secretary [of the Navy] and a claim under the Racketeer Influenced and Corrupt Organization Act against unknown Criminal

---

[6] The D.C. Court appropriately described Plaintiff's causes of action against the NCIS Unknown Agents as "entirely unclear because the plaintiff does not reference the agents in his enumerated claims." (Dkt. No. 18, p. 19.) The undersigned has read Plaintiff's allegations liberally and in the light most favorable to the Plaintiff.

9

  Investigative Service agents, to the United States District Court for the District of South Carolina.

Order, Dkt. No. 17.

  The D.C. Court dismissed the RICO claim against Mabus for lack of jurisdiction. Judge Walton held that the doctrine of sovereign immunity applies to Mabus, and that sovereign immunity has not been waived. He additionally held that even though Plaintiff claimed to be acting as a "private attorney general" representing the interests of the public at large, the claim would still be barred by the doctrine of sovereign immunity. (Dkt. No. 8, p. 14-15.)

  Mabus suggests that the court *sua sponte* dismiss any RICO claim against the NCIS Unknown Agents. Mabus states that any RICO claim in regard to interference with federal employment relations is preempted by the Civil Service Reform Act ("CSRA").[7] Mabus argues that all of Plaintiff's plausible injuries deal with interference with his government employment, and are therefore preempted by the CSRA. (Dkt. No. 42, p. 6.) The undersigned agrees.

  Analyzing the facts Plaintiff alleges against the NCIS Unknown Agents, the undersigned is of the opinion that any injuries are inextricably linked to his federal employment. The allegations against the NCIS Unknown Agents are contained in paragraphs 7, 27, and 55 i., v.. (Dkt. No. 1.) Those allegations appear to be: 1) NCIS agents opened a criminal investigation of Plaintiff (Dkt. No. 1, ¶¶ 7, 55 i); 2) NCIS agents wrote false reports to the General Counsel of the Navy that Plaintiff was plotting a terrorist shooting attack (Dkt. No. 1, ¶27); 3) NCIS and others

---

[7] The CSRA is the comprehensive system for reviewing personnel actions taken against federal employees. It creates a variety of remedial systems for federal employment grievances, and include the MSPB and the Office of Special Counsel. Gonzales v. Manjarrez, No. EP-11-CV-29-KC, 2013 WL 152177 *4 (W.D. Tex. Jan. 4, 2013); see also Elgin v. United States, _U.S._, 132 S. Ct. 2126, 2130 (2012.) As Mabus points out in his Motion to Dismiss, Plaintiff is well aware of the availability of potential relief. (Dkt. No. 42, p. 7 and fn. 4.) Plaintiff has participated in several MSPB actions with claims similar to these. Mabus attaches three MSPB orders to the Motion to Dismiss, and cites one appellate opinion, Abou-Hussein v. Merit Systems Protection Board, 557 Fed. App'x. 979 (Fed. Cir., March 6, 2014.)

unlawfully raised his security clearance requirement (Dkt. No. 1, ¶ 50); 4) in March to April 2009, NCIS agent Troy Williams and other unknown NCIS agents coordinated with SPAWAR to stall an investigation of one of the frauds that Plaintiff had reported and that an NCIS agent "wrote up [Plaintiff] for potential terrorist shooting attack. … (Dkt. No. 1, ¶55 v.); 5) NCIS agent Troy Williams "committed several predicate acts too numerous to list."  (Id.); and 6) on November 17, 2008, "NCIS almost detained plaintiff Extra-Judicially." (Dkt. No. 1, ¶55 x.)

Any investigation of the Plaintiff arose out of his employment.  Plaintiff has not alleged that he was ever actually charged with a crime.  Reports out of that investigation are not alleged to be used against Plaintiff in any way except in his government employment. His security clearance was required because of his employment. The contract fraud complaints arose out of his employment, as did any attempt to "stall" the investigation of that complaint. Plaintiff has already litigated the actual *qui tam* Complaint he filed, unsuccessfully. Plaintiff asserts that he was "almost" detained extra-judicially, not that he was detained.  All of these allegations arise out of the employment context and have to be litigated in the CSRA setting.[8] Plaintiff's Opposition describes the claim as a "conspiracy by Law Enforcement Officers to frame up the Plaintiff with criminal charges that carry the death penalty. …  Defendants intended to have Plaintiff wrongfully convicted and imprisoned… ." (Dkt. No. 61, p. 12.) In the absence of any actual criminal charge or conviction, any injury is speculative at best.

The CSRA preempts RICO claims that are based on what are essentially personnel actions.  Ferris v. Am. Fed'n of Gov't Emps., 98 F.Supp.2d 64, 68-69 (D. Me. 2002) ("once Ferris' complaints are stripped of the personnel actions, she simply cannot state a claim that the behavior of the individual defendants caused her a cognizable injury. Rather, all her claims arise

---

[8] It is noted supra that Plaintiff has failed to exhaust his administrative remedies.

out of her whistleblowing and are 'inextricably linked' to her employment. . . . "). Similar to the plaintiff in Ferris, all of Plaintiff's alleged injuries arise out of his whistleblowing at SPAWAR.

The CSRA is the exclusive remedy for Plaintiff's claims arising out of his employment with SPAWAR. The Fourth Circuit has explained that:

> [W]e hold that Congress intended that the CSRA would operate to the exclusion of all other statutory remedies for claims arising out of the federal employment relationship. Because "Congress clearly intended the CSRA to be the exclusive remedy for federal employees", the comprehensive grievance procedures of the CSRA implicitly repealed all other then-existing statutory rights of the federal employee regarding personnel decisions.

Hall v. Clinton, 235 F.3d 202, 206 (4th Cir. 2000), cert. denied, 532 U.S. 995 (2001) (internal quotation marks and citations omitted).

Even if the Complaint could be generously read to contain claims outside the purview of the CSRA, Plaintiff has failed to allege that he was injured "in his business or property" as required by RICO, 18 U.S.C. §1964(c). To the extent that Plaintiff claims injury to his "business", that injury would be to his federal employment which is cognizable only under the CSRA. Plaintiff has not alleged any injury to a specific property interest. To the extent that Plaintiff claims a property interest in a security clearance, a person has no property interest in a security clearance. Jamil v. Sec'y, Dep't of Def., 910 F.2d 1203, 1209 (4th Cir. 1990); Dorfmont v. Brown, 913 F.2d 1399, 1403-04 (9th Cir. 1990), cert. denied, 499 U.S. 905 (1991.)

Plaintiff states in his Opposition that the "main" RICO predicate act is in paragraph 59 of his Complaint and violated 18 U.S.C. § 1513. (Dkt. No. 61, p. 13-14.) Paragraph 59 is in his second cause of action alleging a violation of the Whistleblower Protection Act; 18 U.S.C. § 1513 is a criminal statute prohibiting retaliation against a witness, victim or informant. (Dkt. No. 1, ¶ 59.) He continues with a laundry list of various criminal statutes as other predicate acts, such as bribery, obstruction of criminal investigation, tampering with a witness, victim or informant,

12

mail and wire fraud, and the like. (Dkt. No. 61, p. 14.) Plaintiff still does not allege specific facts regarding injury to his business or property, as required to state a RICO claim.

The undersigned agrees that the RICO claim against the NCIS Unknown Agents should be dismissed. Having construed the pleadings and exhibits liberally, Plaintiff's plausible injuries deal with interference with his government employment, and are therefore preempted by the CSRA.

b. FCA Claim

In his Opposition, Plaintiff asserts there is a claim against the NCIS Unknown Agents for a violation of the FCA anti-retaliation provisions. The D.C. Court already addressed the FCA retaliation claim in its Memorandum Opinion, dismissing it against Mabus, in part because the CSRA constitutes the exclusive set of statutory remedies for federal employees who allege retaliation resulting from whistleblowing activities. (Dkt. No. 18, p. 16.) (citations omitted.) This ruling is likewise applicable to the NCIS Unknown Agents, to the extent that the Complaint even states an FCA claim against them.[9]

> While a federal government employee, in certain circumstances, may file an FCA *qui tam* action, a federal employee stands on a different footing than a privately employed citizen when it comes to an FCA retaliation claim. … Because [plaintiff] was employed as a civilian employee by the Department of Defense, the CSRA applies to disputes arising out of his employment.

Gibbs v. United States, 865 F.Supp.2d 1127, 1139-40 (M.D. Fla. 2012) (citations omitted); see also Leblanc v. United States, 50 F.3d 1025, 1029-30 (Fed. Cir. 1995) ("The CSRA superseded preexisting remedies for all federal employees", including a False Claims Act retaliation claim.)

---

[9] Mabus correctly points out in his Reply, and as noted by the Memorandum Opinion, Plaintiff's Second Claim for retaliation under the Whistleblower Protection Act and his Third Claim for retaliation under the FCA state they are against "the defendant", singular. The NCIS Unknown Agents are not mentioned in those enumerated claims.

The undersigned recommends that the Plaintiff's Third Claim for FCA retaliation be dismissed against the NCIS Unknown Agents.

      c. Bivens Claims

Plaintiff's alleged Bivens claims likewise must fail because the CSRA preempts the Bivens claims. Case law is clear that claims such as Bivens actions are precluded because Congress has provided a comprehensive alternative regulatory structure to provide relief for federal employees suffering adverse employment actions in the Civil Service Reform Act, the Whistleblower Protection Act, and Title VII. Bush v. Lucas, 462 U.S. 367 (1983); Hall v. Clinton, 235 F.3d at 204-05; Gonzales, 2013 WL 152177 *7-8 (dealing with CSRA preclusion in a Bivens action.) As analyzed above in Section V. a., the claims against the NCIS Uknown Agents all arise out of his employment with SPAWAR. The undersigned recommends that any Bivens claims against the NCIS Unknown Agents be dismissed.

      d. APA Claim

Plaintiff includes in his Opposition that his Complaint included a claim for declaratory and injunctive relief under the Administrative Procedures Act ("APA"), 5 U.S.C. §701, et seq. (Dkt. No. 61, p. 15-16 and Dkt. No. 1, ¶3.) The only injunctive relief requested was for an order directing the Department of Justice to update its website. This allegation was dismissed by the D.C. Court because Plaintiff had no standing to sue that agency. (Dkt. No. 18, p. 17-21.) This claim was not transferred to the District of South Carolina. To the extent that any APA claim may be left, the undersigned recommends that it be dismissed against all Defendants.

To have jurisdiction over an APA claim, a court must find that: 1) the plaintiff seeks relief other than money damages; and 2) there is no other adequate remedy in a court. Nieves v. McHugh, ---F. Supp. 3d ---, 2015 WL 3540455 at *4 (E.D.N.C. June 3, 2015) (citing 5 U.S.C.

§§702, 704; <u>Bowen v. Massachusetts</u>, 487 U.S. 879, 891 (1988); <u>James v. Caldera</u>, 159 F.3d 574, 578-79 (Fed. Cir. 1998)).

To the extent that Plaintiff says he is requesting declaratory relief, nowhere does the Complaint state what declaratory relief is sought. The mandated liberal construction afforded <u>pro se</u> pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to "conjure up questions never squarely presented" to the court. <u>Beaudett v. City of Hampton</u>, 775 F.2d at 1278. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. <u>Weller</u>, 901 F.2d at 391. The undersigned cannot create a question never squarely presented. [10]

The undersigned recommends that all the claims against the NCIS Unknown Agents be dismissed.

VI.    MISCELLANEOUS ISSUES

    a. Ex Parte Filings

Plaintiff states in his Opposition that "Defendants have not served on Plaintiff notice of their ex parte filings" on November 6-7, 2014, and March 9-10, 2015. The filings on those dates are, respectively, Mabus' Reply to Response to Motion to Dismiss for Lack of Prosecution and Memorandum in Opposition to Plaintiff's Motion for and Order Directing Defendants to Enter an Appearance (Dkt. No. 41) and Mabus' Response in Opposition to Motion for Extension of Time to File a Response/Reply as to Motion to Dismiss. (Dkt. No. 58.) The undersigned discerns

---

[10] Plaintiff included citations to 28 U.S.C. §§ 2201 and 2202 as well as to Rule 57 of the Federal Rules of Civil Procedure as a basis for requesting declaratory relief. These additional citations add nothing to the factual basis for declaratory relief.

nothing ex parte. Both docket entries reflect that normal filing procedures were followed. Certificates of Service for both documents were filed. (Dkt. No. 41, p. 8 and Dkt. No. 58, p. 3.)

In Mabus' Reply, there is an indication that there may have been some contact between the Clerk of Court's office and counsel for Mabus regarding filing errors. The November 6, 2014 entry reflects a modification by the Clerk's office to correct the event type. (Dkt. No. 41.) The March 9, 2015 entry reflects that Mabus replaced Attachment 1 with a correct document. (Dkt. No. 58.) Any such innocuous and non-substantive communications were made public by the docket entry. The undersigned agrees with Mabus that if such contact occurred, it does not constitute improper ex parte communication with the court. "Ex parte communications with judicial staff concerning routine administrative matters do not raise any inference of bias." Blixseth v. Yellowstone Mountain Club, LLC, 742 F.3d 1215, 1220 (9th Cir. 2014).

   b. Limited Discovery for Names of NCIS Unknown Agents

Plaintiff requests either that the court order the NCIS Unknown Agents to "enter individual representation" or in the alternative, moves for an order allowing discovery of the "John Doe" defendants' names and addresses for the service of process. First, a court cannot order unknown defendants to enter an appearance because they have not been identified and served. Second, based on the recommendations herein, it would be futile to allow limited discovery since the claims cannot stand even if the agents were identified.

VII.   CONCLUSION

Based on the foregoing, it is recommended that Mabus' Motion to Dismiss (Dkt. No. 42) be GRANTED. It is further recommended that any claims against the NCIS Unknown Agents also be DISMISSED.

AND IT IS SO RECOMMENDED.

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

July 24, 2015
Charleston, South Carolina

**The parties' attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> **Robin L. Blume, Clerk**
> **United States District Court**
> **Post Office Box 835**
> **Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).